**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:
                     Chapter 7

JUGHANDLE BREWING
COMPANY, LLC

                     Case No. 23-15703 (CMG)

        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

## OPINION

**APPEARANCES:**

**Anthony J D'Artiglio**
**Ansell Grimm & Aaron, PC**
Attorney for Eight Star, LLC

**Andrea Dobin**
**McManimon Scotland & Baumann, LLC**
Attorneys for Chapter 7 Trustee

**CHRISTINE M. GRAVELLE, U.S.B.J.**

**Introduction**

    At issue before the Court is whether, in a Chapter 7 case, post-petition, pre-rejection payments due under an unexpired lease of nonresidential real property must be treated as an administrative claim, regardless of whether the expenses were actual, necessary costs of preserving the estate.

    Jughandle Brewing Company, LLC ("Debtor") and Eight Star, LLC (the "Landlord") were parties to such a lease at the time of Debtor's bankruptcy filing. No motion to reject the lease was

filed.  Instead, the lease was rejected by operation of law 120 days after the petition was filed.  *See* 11 U.S.C. § 365(d)(4)(A)(i).  The Landlord moves before this Court to compel payment of all post-petition obligations that came due during that 120-day period.  The Landlord's position is based upon the language of 11 U.S.C. § 365(d)(3)(A), requiring the timely performance of all lease obligations "notwithstanding section 503(b)(1)."

Thomas Orr, the Chapter 7 trustee for the estate (the "Trustee"), objects, arguing that the lease provided no benefit to the estate and cannot be allowed as an administrative expense in a Chapter 7 case.  The Trustee relies on § 503(b)(1), which only allows such claims if they contribute to the "actual, necessary costs and expenses of preserving the estate."  In the alternative, the Trustee cross-moves for a finding that the lease should be deemed as rejected *nunc pro tunc* to the petition date based upon equitable grounds.

Recognizing that the majority of courts remedy the failure of a debtor estate to pay post-petition rent by allowing an administrative claim for the delinquent amount, this Court finds that there is no *per se* rule that an obligation under § 365(d)(3) creates an administrative claim, and that a remedy may be crafted by courts on a case-by-case basis.  Based on the facts and equities of this case a reduced administrative claim is the proper remedy.  The Court will GRANT, IN PART, the Landlord's Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503 (the "Landlord's Motion") and both DENY the Trustee's Cross Motion for Order Rejecting Non-Residential Lease (the "Trustee's Cross Motion") as set forth herein.

## **Jurisdiction**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court.  This matter is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (B).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.  Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.

**Facts**

Debtor and the Landlord were counterparties to an unexpired pre-petition lease dated August 1, 2019 (the "Lease") for real property located at 4043 Route 33, Tinton Falls, New Jersey (the "Property").  The Lease was amended by agreement dated January 1, 2022.  OceanFirst Bank, as successor by merger to TwoRiver Community Bank ("OceanFirst"), held a UCC lien on substantially all of Debtor's collateral.  Most, if not all, of the collateral was located at the Property.  The Landlord executed a Landlord's Waiver (the "Waiver") in favor of OceanFirst.  The Waiver allowed, in specified circumstances, for OceanFirst to enter the Property to remove its collateral without charge for a ten-day period.  Thereafter, OceanFirst was required to pay a use and occupancy fee equal to the prorated rent for any additional period of time.

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on July 3, 2023 and the Trustee was appointed the next day.  Debtor's petition disclosed assets totaling over $460,000, which were listed as being fully encumbered by a UCC lien in favor of the United States Small Business Administration ("SBA").  The SBA was listed with an Alabama address.  The schedules also specified OceanFirst as an additional party to be notified as to the claim.  The Trustee certifies that during the first three weeks of his administration he attempted to contact the SBA, through the United States Attorneys' Office, to discuss liquidation of the collateral in exchange for a carveout to cover the costs of the liquidation.  Instead, OceanFirst contacted the Trustee on July 24, 2023, and informed him that it held the lien and did not want the Trustee to

liquidate the collateral.  The Trustee avers that, at this point, OceanFirst "assumed control of the collateral."

In the meantime, the Trustee reached out to the Landlord's counsel on July 21st.  A week later, the attorney for the Landlord contacted the Trustee asking for contact information for OceanFirst's counsel so he could "inquire as to storage payments to the Landlord."  Counsel for the Landlord also told the Trustee that he was "preparing a motion to vacate the stay and take other state court actions against the guarantors."  There was no discussion regarding the Trustee's obligations to pay rent under § 365(d)(3).[1]  Instead, the Landlord and OceanFirst each moved for relief from stay, on shortened time, as to the Lease and the collateral respectively.  The Trustee did not oppose either request for relief from stay.  The motions were granted on August 30, 2023.

After receiving relief from the automatic stay, the Landlord and OceanFirst entered into a Use and Occupancy Agreement that, pursuant to the Waiver, allowed OceanFirst access to its collateral in the Property.  In exchange, OceanFirst paid a pro-rata license fee of $407.25 per day starting on September 9, 2023, until it disposed of its collateral.  Meanwhile, the Landlord proceeded in state court as to its rights to the Property, obtaining a judgment for possession of the Property in November 2023.  With stay relief granted, the Trustee took no further action with regard to the Property and the Lease was deemed rejected by operation of law on or about November 3, 2023.  *See* 11 U.S.C. § 365(d)(4)(A)(i) (unexpired leases of nonresidential real property in Chapter 7 cases deemed rejected 120 days after order for relief, unless already assumed or rejected).  The Landlord filed its Motion to Compel Payment of Administrative Expenses on October 18, 2023.

---

[1] The applicable portion of 11 U.S.C. § 365(d)(3) states: (A) The trustee shall timely perform all the obligations of the debtor, ...arising from and after the order for relief under any unexpired lease of non-residential real property, until such lease is assumed or rejected, notwithstanding § 503(b)(1) of this title.

## Analysis

### Overview

11 U.S.C. § 503 is entitled "Allowance of Administrative Expenses," and contains a non-exhaustive list of potential administrative expenses to be allowed after notice and a hearing. *See* 11 U.S.C. § 503(b)(1)-(10). Designation as an administrative expense is an important one, as such claims allowed under § 503(b) are entitled to priority over unsecured creditors in the Bankruptcy Code's distribution scheme. *See* 11 U.S.C. § 507(a)(2). "The presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among creditors. Thus, statutory priorities must be narrowly construed." Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 865 (4th Cir. 1994) *citing* In re James B. Downing & Co., 94 B.R. 515, 519 (Bankr. N.D.Ill. 1988, *itself citing* Joint Indus. Bd. v. U.S., 391 U.S. 224, 228 (1968). As a result, it is generally accepted that "[s]ection 503(b) … must be narrowly construed." Dobbins *citing* Burlington N. R.R. v. Dant & Russell, Inc., 853 F.2d 700, 706 (9th Cir. 1988).

In its analysis of claims allowance in cases filed under Chapter 11 of the Code, the Third Circuit has noted that an administrative expense allowance under 11 U.S.C. § 503(b)(1) must be (i) supported by "a [post-petition] transaction with the debtor-in-possession" and (ii) "beneficial to the debtor-in-possession in the operation of the business" (or actual and necessary, as required by the Code). *See* In re Marcal Paper Mills, Inc., 650 F.3d 311, 315 (3d Cir. 2011), *quoting* In re O'Brien Envtl. Energy, Inc., 181 F.3d 527, 532–33 (3d Cir.1999). The Third Circuit explained that meeting these two requirements promoted the solvent functioning of the estate by prioritizing creditors that helped keep the debtor in business, while preventing the estate from being consumed by administrative expenses, thereby preserving the estate for the benefit of the creditors. *See* id., (citations omitted).

Section 365 of the Code, which the Landlord claims entitles it to an administrative expense, requires a trustee to timely perform all post-petition obligations of the debtor arising under any unexpired lease of nonresidential real property. *See* 11 U.S.C. § 365(d)(3)(A). The express language of the statute requires such performance "until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." *See* id., (emphasis added). The Landlord argues that the phrase "notwithstanding section 503(b)(1)," in the statute eliminates the requirements in § 503(b)(1) that the lease obligations be actual or necessary costs of preserving the estate and removes the procedural requirements of notice and a hearing.

The intent behind § 365(d)(3), as applicable to the facts of the case before this Court, is set forth in its legislative history:

> This subtitle contains three major substantive provisions which are intended to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code.... A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments under the lease. In this situation, the Landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor. The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will ensure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

Senator Orrin Hatch, H.R. Rep. No. 882, 95th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 576. The Senator's reasoning applies to shopping centers but, in large part, not to the case before the Court. There are no other tenants affected here and the only reason the Landlord may have

been forced to provide services would have been to preserve OceanFirst's collateral, which offered no benefit to the estate.[2]

Nevertheless, Senator Hatch's main point makes sense here and in cases involving nonresidential real property since the lease itself may have value even if the leased space has been vacated. While a trustee determines whether it would benefit the estate to assume and assign a lease, a landlord cannot not re-rent the space, thereby forcing the landlord to incur additional post-petition losses that other creditors are not required to bear.

But while § 365 imposes an obligation to pay post-petition rent, it makes no mention of the consequences for failure to do so. Post-petition rent due under a nonresidential lease that has been accepted and then rejected is clearly an administrative expense as defined by the Code. *See* 11 U.S.C. § 503(b)(7). Yet § 503 makes no allowance for unpaid post-petition rent under a nonresidential lease on which a trustee has taken no action to assume or reject.

Section 365 allows, but does not require, a trustee to assume or reject a lease. *See* 11 U.S.C. §365(a). If the trustee takes no action, the lease will expire 120 days after entry of the order for relief. 11 U.S.C. § 365(d)(4)(A)(1). Meanwhile, the § 365(d)(3) obligations remain. Section 503 allows a creditor to make a timely request for payment of an administrative expense, or a late request for payment with permission of the court for cause. *See* 11 U.S.C. § 503(a).

Here, the Trustee took no formal action to assume or reject the Lease, although he communicated with the Landlord regarding disposal of the collateral at the Property, which disposal was assumed by OceanFirst. The Landlord did not demand that the Trustee timely perform the Lease obligation of rental payments as those payments came due. Instead, the

---

[2] The Trustee has reserved his right to surcharge OceanFirst under 11 U.S.C. § 506(c) which provides that a "trustee may recover from property securing an allowed, secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . ." That issue is not currently before the Court.

Landlord proceeded to obtain stay relief, knowing that the Trustee would not object.  Only after

the Lease was rejected as a matter of law did the Landlord come before this Court to request

payment of the rental obligations as an administrative expense.

Applicable Law

In re Goody's Family Clothing Inc. is the primary Third Circuit opinion cited by the parties

which addresses the interplay between § 365(d)(3)(A) and § 503(b)(1).  In that case the Circuit

Court held that "§ 365(d)(3) is best understood as an exception to the general procedures of §

503(b)(1) that ordinarily apply."  610 F.3d 812, 817 (3d Cir. 2010).  The Third Circuit summarizes

its precedent as follows:

> Post-petition obligations are ordinarily given payment priority as administrative expenses,
> though such claims must still go through standard procedures of notice and a hearing to
> demonstrate that the costs were actual, necessary expenses of preserving the estate. See 11
> U.S.C. § 503(b) ("After notice and a hearing, there shall be allowed administrative
> expenses, ... including ... the actual, necessary costs and expenses of preserving the
> estate."). Section 365(d)(3) operates to dispense with these requirements for post-petition
> obligations under an unexpired lease of nonresidential real property, meaning it functions
> "without prevention or obstruction from or by" § 503(b)(1).

In re Goody's Family Clothing Inc., 610 F.3d at 817.

The Landlord contends that In re Goody's supports its right to a *per se* administrative claim.

It argues that § 365(d)(3) is meant to provide a less burdensome procedure for allowance as an

administrative claim than § 503(b)(1) in the limited case of an unexpired lease of non-residential

property.

Such reliance on In re Goody's is misplaced.  In its In re Goody's opinion, the Circuit

addressed a much different issue than the one presented here.  Unlike in the matter at hand, the

debtor in In re Goody's complied fully with the obligations imposed by § 365(d)(3).  The Court

had no reason to analyze the proper remedy for failure to make such a payment.  What remained

unpaid was the stub rent that accumulated after the petition was filed but before the next rent payment was due pursuant to the terms of the lease.  As such, the debtor had no obligation under § 365(d)(3) to pay stub rent.  The Third Circuit defined the question before it as whether § 365(d)(3) was the only source of payment for stub rent, or whether a landlord could seek payment of stub rent pursuant to § 503(b)(1) as an actual and necessary cost to the estate.  *See* id. at 816.  It found that "[r]elieving a landlord under § 365(d)(3) of burdensome administrative procedures … does not foreclose that landlord's ability to use the more burdensome procedures [set forth in § 503(b)] to recover in situations outside the scope of § 365(d)(3)."  Id., 610 F.3d at 817.  As a result, the holding in In re Goody's simply allowed the landlord to seek payment for stub rent pursuant to § 503(b)(1).

The case did not establish any clear precedent as to the required remedy for a § 365(d)(3) violation.  The Third Circuit stated that § 503(b)(1) does not "prevent[] or obstruct[]" obligations due under § 365(d)(3)."  In re Goody's, 610 at 817.  But stating that § 365(d)(3) obligations are not obstructed by the requirements of § 503(b)(1) is wholly different than saying that § 365(d)(3) obligations can only be remedied by an allowance of a claim under § 503(b).  The case spoke to whether a claimant could pursue a § 503(b)(1) claim in addition to a claim under § 365(d)(3).  For that reason, I find no binding circuit precedent that the allowance of an administrative claim is the sole remedy for a violation of § 365(d)(3).

This is in accord with the number of courts which note that § 365(d)(3) creates an obligation to perform without a specific remedy for nonperformance.  *See, e.g.*, In re Southwest Aircraft Services, Inc., 831 F.2d 848, 854 (9th Circuit 1987) (Congress intended bankruptcy courts to have discretion to consider all facts and circumstances involved to decide whether consequence of violation of subsection 365(d)(3) should be forfeiture of unassumed lease, some other penalty, or

no penalty); In re PYXSYS Corp., 288 B.R. 309, 313 (Bankr. D. Mass. 2003) (365(d)(3) creates

right without remedy), (citations omitted); In re Mr. Gatti's, 164 B.R. 929, 946 (Bankr. W.D. TX

1994) (Congress chose not to spell out the consequences of default under § 365(d)(3), because

landlord's interest was protected by other provisions in the Code).

The allowance of an administrative claim where a trustee fails to perform under § 365(d)(3)

is the presumed remedy for a majority of courts throughout the country.  *See*, *e.g.*, In re KDA Grp.,

Inc., 574 B.R. 556, 558-59 (Bankr. W.D. Pa. 2017) (§ 365(d)(3) entitles creditor to administrative

expense claim for post-petition lease obligations prior to rejection despite being unable to establish

a claim under § 503(b)(1)); In re Microvideo Learning Sys., Inc., 232 B.R. 602, 604 (Bankr.

S.D.N.Y. 1999) (failure to pay post-petition rent pursuant to § 365(d)(3) gives rise to

administrative expense claim despite requirements of § 503(b)(1)); In re Slim Life Weight Loss

Centers, Corp., 182 B.R. 701, 705-06 (Bankr. D.N.J. 1995) (11 U.S.C. § 365(d)(3) grants

administrative priority to rents due under unexpired lease of non-residential real property in spite

of requirements of 11 U.S.C. § 503(b)(1)).  In general, courts considering the appropriate remedy

for failure to comply with § 365(d)(3) do not address whether there may be a remedy other than

allowance of an administrative expense.

These courts and others with similar outcomes generally reach their conclusion based upon

the intent of the statute.  The Ninth Circuit elaborated on the concerns expressed by Senator Hatch

in the legislative history to § 365(d)(3) in the case of In re Pacific-Atlantic Trading Co., 27 F.3d

401 (9th Cir. 1994).  There, the court found that failure to pay rent pursuant to § 365(d)(3)(A)

results in an administrative claim. It noted that without mandating payment through an

administrative expense a trustee would be permitted to benefit from disobeying the statute's

directive by simply failing to pay rent.  *See* id. at 405.  Allowing another remedy would do nothing

to address the problem that § 365(d)(3) seeks to resolve, namely that the landlords and their other

tenants bear the post-petition costs and burdens while a trustee evaluates the value of the lease.

*See* id. The Court reasoned that the statutory requirement to pay post-petition rent puts the burden

on the trustee to stop the obligation to pay by formally rejecting the lease. *See* id. By failing to

allow an administrative expense, the burden shifts to the landlord to move to reject the lease or

take some other action to protect its interests if it is not being paid. *See* id.

This Court agrees with the Ninth Circuit's reasoning that the Code places the burden on

the trustee to accept or reject a nonresidential lease. But I disagree that the allowance of an

administrative expense is the only remedy available for a violation of § 365(d)(3). The trustee's

right to assume or reject a lease does not preclude a landlord from taking affirmative action to

protect its interest. A landlord may seek relief from stay pursuant to § 363(d), move to compel the

trustee to assume or reject, or seek payment of post-petition rent pursuant to § 365(d)(3) or §

503(a).

A minority of courts, recognizing the lack of an explicit remedy in § 365(d)(3), have

addressed noncompliance through other means. *See, e.g.,*, In re DBSI, Inc., 407 B.R. 159, 164

(Bankr. D. Del. 2009) (allowed lease rejection in timely manner); In re Mr. Gatti's, 164 B.R. at

946 (allowed administrative rent claim in greatly reduced amount); In re Telesphere Commun'cs.,

Inc., 148 B.R. 525, 531-32 (Bankr. N.D. Ill. 1992) (relying on § 105(a) to order payment of post-

petition rent rather than relying on § 365(d)(3)). Another court has opined that a claim under §

365(d)(3) is a distinct obligation from an administrative claim under § 503(b)(1), noting:

> Section 365(d)(3) calls for the pre-rejection period timely performance of
> lease obligations "notwithstanding section 503(b)(1)". In other words, §
> 365(d)(3) effectively reads: "forget what § 503(b)(1) says" when the issue
> is pre-rejection period obligations of a nonresidential real estate lease.
> Consequently, § 365(d)(3) can be read to say that aside from administrative

expenses provided for in § 503(b)(1), § 365(d)(3) creates a new and different kind of "obligation"—one that does not necessarily rest on the administrative expense concept. Thus, I do not have to conclude that the obligation is an administrative expense claim. I simply conclude that Congress found it appropriate to require that the lease "obligations" must be timely paid (i.e., when due in the pre-rejection period), however one may otherwise label those "obligations." Additionally, I note that in the second sentence of § 365(d)(3) (relating to the 60-day grace period for cause) the statute speaks in terms of "performance" of any such obligation, not payment of an administrative expense claim.

In re Valley Media, Inc., 290 B.R. 73, 77 (Bankr. D. Del. 2003). Finding that a § 365(d)(3) obligation is a different type of obligation than one defined as an administrative claim in § 503(b)(1), appears to be the most logical reading of the statute.

Most convincing to this Court is the belief that had Congress intended for an administrative expense to be the exclusive remedy for a violation of § 365(d)(3), it would have set forth such relief within the statute. In fact, § 503(b)(7) defines certain debt accumulated under a nonresidential lease that was accepted and then rejected as an administrative expense. There is no such treatment given in § 503(b) to unpaid post-petition rental obligations generally. It is unlikely that Congress sought to impose a specific remedy through implication when it did not do so explicitly.

For these reasons the Court finds that the allowance of an administrative claim under § 503(b) is not the exclusive remedy for the failure of a trustee to comply with § 365(d)(3). Instead, the ability to craft a remedy appears to fall squarely within the confines of 11 U.S.C. § 105(a), which allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

This Court is aware of the restrictions on its use of its equitable principles to contravene a specific provision of the Bankruptcy Code. See Law v. Siegel, 571 U.S. 415 (2014) (bankruptcy courts cannot rely on § 105(a) to interfere with Code provisions). Because Congress has not

articulated a specific remedy in § 365(d)(3), utilizing equitable powers in this instance does not run afoul of that directive.   Instead, equitable considerations allow courts to promote two of the Code's underlying purposes by balancing the protections afforded post-petition landlords with the requirement that administrative expense allowances be narrowly construed to insure the fair treatment of all creditors.

<u>Considerations in Chapter 7 Cases</u>

The Trustee claims that the analysis of § 365(d)(3) must be different in Chapter 7 cases versus Chapter 11 cases, and that the "actual and necessary" requirement of § 503(b)(1) must still be applicable.  As his counsel cogently noted at oral argument, a Chapter 11 debtor, as debtor-in-possession, has knowledge of its leases on day one of the bankruptcy filing and has the ability to immediately reject or assume those leases.  On the other hand, a Chapter 7 trustee needs time to evaluate the debtor and its assets (including unexpired leases) before deciding whether to reject or assume those leases.  Further, this Court notes that the language of the statute is awkward when applied to Chapter 7 cases.  Section 365(d)(3) compels the trustee to "timely perform all the obligations of the debtor."  But it is rare in a Chapter 7 case for the trustee to have the financial ability to perform those obligations by making lease payments mere days or weeks into the case.

I agree that a newly appointed Chapter 7 trustee's lack of knowledge as to the value of a lease varies widely from that of a Chapter 11 debtor-in-possession's perspective based on knowledge and experience.  But the structure of § 365 as a whole does not support a different application of § 365(d)(3) in Chapter 7 cases versus Chapter 11 cases.  Congress distinguished between the different bankruptcy chapters with regard to unexpired leases of residential real property.  *Compare* 11 U.S.C. § 365(d)(1) (leases of residential real property deemed rejected 60 days after order for relief in Chapter 7) *with* 11 U.S.C. § 365(d)(2) (leases of residential real

property may be rejected at any time before confirmation in Chapters 9, 11, 12, or 13).  If Congress had intended for different treatment of unexpired leases of nonresidential real property in those chapters, it could have made a similar distinction, but it did not.  This evidences an intent on the part of Congress to protect landlords in both Chapter 11 cases as well as Chapter 7 cases.

The concerns leading to the passage of § 365(d)(3) are no less relevant in Chapter 7 cases.  The petition date acts as a dividing line for most creditors.  On that date, pre-petition claims are set for a sum certain.  But landlord claims continue to accrue while the trustee determines whether or not to assume the lease.  Individual considerations inherent in Chapter 7 cases may affect the remedy imposed when the trustee fails or is unable to make post-petition rental payments, but Chapter 7 cases may not be treated differently as a matter of law.  This Court's finding that it may use its discretion in determining the remedy for a violation of § 365(d)(3) based on the facts and circumstances of each case allows it to consider the differences presented in the administration of cases filed under Chapter 7 as opposed to those filed under Chapter 11.

The Trustee alternatively advances a statutory argument distinguishing Chapter 7 cases from Chapter 11 cases.  He cites to 11 U.S.C. § 726, which provides strict guidelines as to the distribution of property of the estate in Chapter 7 cases, beginning with priority claims allowed under § 507.  *See* 11 U.S.C. § 726(a)(1).  And under § 507(a)(2) priority is given to "administrative expenses allowed under section 503(b) of this title."  But a § 365(d)(3) obligation is not an administrative expense allowed under § 503(b)(1), it is an expense which is allowed in spite of the requirements of § 503(b)(1).  Thus, according to the Trustee, Chapter 7 trustees are statutorily precluded from making distributions on such a claim.

The caselaw presented by the Landlord does not address the statutory idiosyncrasy created by § 726.  Instead, it assumes that an administrative claim is the remedy to a § 365(d)(3) obligation

and therefore its claim is entitled to administrative priority to be paid *pari passu* with other § 507(a)

claims.  *See*, *e.g.*, In re Granada, Inc., 88 B.R. 369, 374 (Bankr. D. Utah 1988) (holding that §

365(d)(3) claim not entitled to super priority status; instead, it shares general priority status with

other § 507(a)(1) claims); *see also*, In re Circuit City Stores, Inc., 447 B.R. 475, 508 (Bankr. E.D.

Va. 2009) (lessor need not show continued possession of leased space benefited estate to earn

administrative expense status); In re Slim Life Weight Loss Ctrs. Corp., 182 B.R. at 705-06 (§

365(d)(3) mandates landlord's entitlement to § 507(a) administrative priority payment even if

debtor did not occupy property post-petition); In re Jillian's Entm't Holdings, Inc., 336 B.R. 298,

300-01 (Bankr. W.D. Ky. 2006) (generally accepted that post-petition, pre-rejection rent accorded

administrative expense status).

The Trustee's argument leads to the question of whether the treatment of § 365(d)(3) claims

as administrative expenses under § 503(b) is permissible at all.  Not all courts agree that unpaid

post-petition, pre-rejection lease payments should be allowed as administrative expenses.  For

example, the court in In re DBSI, Inc. determined that treatment as an administrative claim should

not be considered as a potential penalty.  *See* In re DBSI, Inc., 407 B.R. at 164 (alternative remedies

for violation of § 365(d)(3) indicate prohibition of allowance of administrative claim as penalty).

That court did not go into great detail on the point, and the Trustee did not submit additional

caselaw in support of such a position.

As this Court previously stated, the remedy for failure to perform a § 365(d)(3) obligation

is a different animal than an actual and necessary expense allowable under § 503(b)(1).  This Court

cannot use its equitable powers to provide a § 365(d)(3) claim with the same statutory rights and

benefits afforded to claim under § 503(b)(1).  But § 503(b)(1) is not the exclusive category for

administrative expenses.  11 U.S.C.  §  503(b)  makes  clear  that  "there  shall  be  allowed,

administrative expenses . . . including . . ." a list of ten categories.  The rules of construction of the

Bankruptcy Code explicitly provide that the word including "[is] not limiting."  11 U.S.C. §

102(3).  As explained by the Sixth Circuit:

> The insertion of [including] indicates that Congress did not intend to
> provide an exhaustive list of allowable expenses. Rather, it appears that
> Congress anticipated that bankruptcy courts would encounter a variety of
> administrative expenses and circumstances warranting reimbursement,
> which it could then evaluate on a case-by-case basis depending on the
> specific facts of the case, the benefit conferred upon the bankruptcy estate
> and its creditors, and whether the expenses at issue were actual, necessary,
> and reasonable.

In re Connolly North America, LLC, 802 F.3d 810, 816 (6th Cir. 2015).  While this Court cannot

allow a claim under § 503(b)(1) specifically, it may nonetheless utilize its equitable powers to

allow a claim on a case-by-case basis under § 503(b) generally.

I find that the allowance of an administrative expense may be used as a remedy for the

failure to satisfy a § 365(d)(3) obligation.  Failing to provide for such a remedy would vitiate the

intent of the statute.  Without some monetary recourse available to a landlord, there would be little

incentive for a trustee to make a payment under § 365(d)(3) unless and until the lease is assumed.

On the other hand, a landlord who faces unlikely prospects for re-leasing its space is more

likely to sit back and wait for rejection by operation of law.  In a case where the trustee fails to

reject and an administrative expense allowance is the only remedy, that landlord benefits at the

expense of all other creditors.  The ability of the court to apply its discretion in addressing the

problem of post-petition unpaid rent ensures a balancing of a trustee's obligations under §

365(d)(3) with a landlord's ability to take advantage of its position to the detriment of the other

creditors.

The bankruptcy court's powers must be extended so far as to "give teeth" to the statute. This includes allowing administrative expense claims as a remedy. Such a remedy may be the most logical outcome in most cases. But, recognizing that an allowance of an administrative expense claim is not the only remedy available, allows a court to reasonably address the problem on a case-by-case basis.

<u>Retroactive Rejection of the Lease</u>

The Trustee's Cross Motion, filed on November 3, 2023, could be construed as either a request for an alternative remedy for the § 365(d)(3) violation, or an independent request for relief. The Code allows a trustee to assume or reject a lease. *See* 11 § U.S.C 365(a). It allows the trustee up to 120 days to determine whether the lease may add value to the estate before the lease is automatically rejected. *See* 11 U.S.C § 365(d)(4)(A)(i). The 120-day period, preventing the lessor from re-renting the property or clearing out any furniture, inventory, or equipment without the trustee's consent, provides a benefit to the trustee. It gives the trustee time to put together a rational liquidation plan. The sooner a trustee rejects a lease, the sooner the obligations imposed by § 365(d)(3) evaporate.

Courts in the Third Circuit have ordered such retroactive rejection of a lease under "exceptional circumstances."[3] *See* <u>In re KDA Group, Inc.</u>, 574 B.R. 556, 560-61 (Bankr. W.D.Pa. 2017) (court's ability to provide retroactive relief derives from its use of equitable powers to further purposes of §365). The Third Circuit has neither endorsed nor prohibited retroactive rejection of leases. *See* <u>id</u>. at 560. "The decision to grant retroactive rejection of a lease or contract

---

[3] Notably, the idea that a court may utilize its equitable powers to retroactively reject a lease supports this Court's finding that an administrative claim is not the sole remedy for a § 365(d)(3) violation. If the statute created an administrative claim as a matter of law, then <u>Law v. Siegel</u> dictates that the utilization of § 105(a) would not be permissible to circumvent the statute.

is dictated by equitable considerations." *See* In re Philadelphia Newspapers, LLC, 424 B.R. 178,

184 (Bankr. E.D. Pa. 2010). The "equities" considered by these courts include situations where

the lease rejection is allowed retroactive to the date the motion to reject was filed, or the date when

the premises were surrendered. Here, the Trustee asks that the lease be deemed rejected as of the

petition date.

The Trustee's request that the Court allow retroactive rejection of the Lease to the petition

date must be denied. Some of the equities cited by the Trustee are duplicative to his arguments as

to why § 365(d)(3) should not apply to Chapter 7 cases. Namely, that because he needed time to

assess the value of the Lease and that because the Lease ultimately provided no value to the estate,

retroactive rejection is appropriate. These are far from the "exceptional circumstances" required

for the utilization of a court's equitable powers to allow retroactive rejection. As discussed, the

statute provides no basis for distinguishing between Chapter 7 and Chapter 11 cases.

But the Trustee also cites to the discussions between the Trustee, OceanFirst, and the

Landlord from late July into August, and the corresponding actions taken by those parties as

constituting a constructive "surrender" of the Property such that retroactive rejection is

appropriate. Essentially, the Trustee argues that the Landlord knew, or should have known, that

the Trustee had no interest in the Lease based on conversations between the parties during that

time period. As to the collateral, it is apparent that all parties understood that OceanFirst's lien

was undersecured and therefore those assets had no value to the bankruptcy estate. The parties

worked together to effectuate a process whereby OceanFirst could liquidate the collateral. Both

the Landlord and OceanFirst obtained stay relief on shortened time (with no objection by the

Trustee), then worked together to allow access to the Property in exchange for storage payments

as contemplated by the Waiver and the Use and Occupancy Agreement.

The Lease was an asset separate from the collateral, for which the Trustee gave no formal notice of his intention to accept or reject until he filed the Trustee's Cross Motion.  While the Trustee did not oppose the Landlord's motion for relief from stay as to the Property, stay relief did not have the effect of removing the Lease from the estate or otherwise abandoning the asset. Though unusual, the Trustee could have still assumed and sold the Lease despite the grant of stay relief.  On the other hand, the fact that the Landlord entered into a Use and Occupancy Agreement supports the idea that it believed the Trustee had no rights to the Property pursuant to the Lease.

Yet, the Landlord was still forced to go through the state court process for eviction (which did not conclude until November) before it could re-let the Property.   If the Trustee had formally rejected the Lease, or if the Landlord had brought the issue to light by requesting rental payments sooner, the eviction process could have been avoided.  OceanFirst asked the Trustee to file a Notice of Abandonment of the Collateral, which he did immediately on September 7, 2023.  That would have been a logical time to abandon or reject the Lease as well.  But the Trustee took no action and the Landlord stayed silent.

The Landlord had advised Trustee the that it was going to obtain storage payments from OceanFirst and that the request for stay relief was, in part, for the purpose of pursuing remedies against Debtor's principals on the obligation.  The Landlord never made any demand for the Trustee to timely perform the obligations under the Lease.  The Trustee reasonably believed that the Landlord was pursuing other options for payment and was satisfied with the grant of stay relief to pursue the Property.  He had no knowledge that, even after receiving rental payments from OceanFirst, the Landlord would belatedly assert a claim for unpaid amounts due under the Lease.

Finally, the Landlord reasonably should have known that the bankruptcy estate would have limited funds available on account of the OceanFirst lien against the collateral.  Yet instead of

inquiring as to whether the Trustee would reject the Lease, giving it immediate access to the Property, it instead pursued the longer and more costly process of obtaining relief from stay and pursuing eviction in state court.   My guess would be that, if the Landlord had a desirable tenant waiting in the wings, the Landlord would have had the incentive to seek rejection sooner rather than later.  Or at the very least, would have been prompted to discuss the future of the Property with the Trustee.  Here though, it appears the Landlord had no incentive to do anything with the Property since OceanFirst was obligated to pay for the space as long as its collateral was stored there.  I do note that OceanFirst did not begin paying until early September, two months after the date of the petition, but with that promise, it would behoove the Landlord to sit back and rely on § 365(d)(3) to provide reimbursement for any lost rent.

Certainly, the best interests of the estate would have been better served if the Trustee had immediately rejected the Lease.  But the facts support the Trustee's belief that the Landlord was aware, or should have been aware, that the Lease offered no benefit to the estate.  The Trustee's misunderstanding supports a finding of excusable neglect on his part for failure to formally reject the Lease.  The grounds for the Trustee's misunderstanding, combined with the facts that the Landlord accepted rental payments from OceanFirst and waited until after the expiration of the 120-day period to have its motion for payment of administrative rent heard, raises some equitable concerns.

While this Court is cognizant of the difficulties caused by the unsettled nature of the law and the Landlord's failure to demand payment in a timely fashion, I must agree that the burden to reject the Lease was on the Trustee.  The record does not support a finding that the Property was ever surrendered such that the Lease could be deemed to be retroactively rejected to the petition date.   For these reasons the Trustee's cross-motion must be denied.

**Remedy/Amount of Claim**

In this case the most reasonable remedy is the allowance of an administrative claim, largely for the same equitable considerations analyzed by this Court in its examinations of the Trustee's request for retroactive rejection of the Lease. Congressional intent makes clear that landlords should not be saddled with additional post-petition damages during a bankruptcy. While this may reduce the distributions to the creditor body as a whole, the creditor body does not face a similar burden. Because the Lease cannot be deemed surrendered prior to its rejection, monetary compensation is warranted.

The Landlord submitted three summaries of damages it alleges are due to it as an administrative expense: (i) Proof of Claim no. 6-1, filed October 18, 2023 ("Proof of Claim"); (ii) the Landlord's Motion (calculation of damages contained in the Certification of Anthony J. D'Artiglio, ECF Doc. 60-1), filed October 18, 2023 ("Motion"); and (iii) First Amended Declaration of Anthony J. D'Artiglio, Esq. in Support of the Motion for Allowance of an Administrative Expense Claim Pursuant to 11 U.S.C. § 503 (ECF Doc. 63), filed October 30, 2023 ("Amended Declaration").

The Court is unclear as to the amount of the claim sought by the Landlord. I am generally relying on the Amended Declaration as it is the most recently filed document. Through the Amended Declaration the Landlord seeks a total of $29,375.64, broken down as follows:

  a. $11,306.86 for Post-Petition July 2023 stub rent;
  b. $64.86 for Post-Petition July 2023 garbage service;
  c. $12,387.05 for Post-Petition August 2023 rent;
  d. $3,303.21 for Post-Petition September 2023 stub rent;
  e. $207.99 for August-October 2023 garbage services;
  f. $1,363.50 in late fees; and
  g. $742.17 in interest as of October 27, 2023.

But there are discrepancies and missing information throughout the filings which make the calculation of damages difficult. Part 3 of its proof of claim states that the monthly base rental obligation for the relevant period was $12,086.64. Yet the Amended Declaration lists August 2023 rent at the amount of $12,387.05.

Similarly, on November 17, 2023, the Landlord filed a brief replying to the Trustee's objection to Motion for Allowance of Administrative Expense Claim and in Opposition to the Cross Motion supported by a Certification of Anthony D'Artiglio. ECF Doc # 72 and 72-1. This certification references payments made to the Landlord by OceanFirst for a license fee and base rent beginning on September 9, and continuing until the collateral was cleared from the Property. It is unclear how long it took for OceanFirst to clear its collateral or how much it ultimately paid to the Landlord. The Court assumes that the amounts paid by OceanFirst were contemplated by the Amended Declaration. The figures do not include a rent payment for October, and the rent payment for September appears to be prorated into a "stub rent" which is presumably the difference between the base rent and the amount paid by OceanFirst from September 9 until the end of the month. This Court will allow the Landlord an administrative claim for the base rental amount for August, September, and October less any amounts paid to the Landlord by OceanFirst. From the Amended Declaration it appears that amount would equal $15,690.26. However, without a more explicit understanding of the charges this Court is hesitant to reduce the claim to an exact amount.

The Landlord also seeks the amount of $11,306.86 for stub rent for July. The July Lease payment was due on July 1st, prior to the filing of the petition on July 3rd. "An obligation arises under a lease for the purposes of § 365(d)(3) when the legally enforceable duty to perform arises under that lease." In re Montgomery Ward Holding Corp., 268 F.3d 205, 211 (3d Cir. 2001). The Landlord is therefore seeking this portion of its claim under § 503(b)(1) only, and that amount

must "actual, necessary costs and expenses of preserving the estate." This was the issue considered

in the Goody's case, where the Third Circuit found:

> For a commercial lessor's claim to get administrative expense treatment
> under § 503(b)(1), the debtor's occupancy of the leased premises must
> confer an actual and necessary benefit to the debtor in the operation of its
> business. *See* Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien
> Envtl. Energy, Inc.), 181 F.3d 527, 532–33 (3d Cir.1999) (citing Cramer v.
> Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st
> Cir.1976)). Proving this is the lessor's burden. Id. at 533. Thus, the
> Landlords "must ... carry the heavy burden of demonstrating that the ['stub
> rent'] for which [they] seek[ ] payment provided an actual benefit to the
> estate and that [incurring 'stub rent' was] necessary to preserve the value of
> the estate assets." Id. (citation omitted).

In re Goody's Family Clothing Inc., 610 F.3d at 818.

The Landlord offers no evidence that the stub rent was actual or necessary. Here the Debtor

was not operational and the Trustee had no claim to the collateral stored at the Property, which he

made clear to the Landlord and OceanFirst. Payment of stub rent could not have provided any

benefit to the estate. The only perceived benefit to the estate was allowing the Trustee time to

perform his investigation as to whether the Lease has any value. This does not meet the standard

set forth by the Third Circuit, and for that reason that portion of the claim is only allowable as a

general unsecured claim.

Finally, the Amended Declaration also includes late fees, interest, and fees for garbage

services. These fees are not appropriate under the facts of this case. It would not be equitable to

allow the Landlord to collect late fees and interest where it made no demand for payment to the

Trustee to notify him of his potential obligations, particularly where stay relief had been granted

and where the Landlord had an agreement with a third-party to make payments. Additionally, the

Trustee did not have the funds to make payment. Saddling an insolvent estate with additional

charges based upon its inability to pay would be contrary to the Bankruptcy Code.  These fees will not be allowed.

**<u>Conclusion</u>**

For the reasons stated, the Landlord's motion is GRANTED IN PART and the Trustee's cross-motion is DENIED.  The Landlord will be allowed an administrative claim in an amount limited to its base rent for August, September, and October under the Lease less any payments paid to Landlord from OceanFirst.  Landlord will submit its calculations within seven (7) days of this decision.  Trustee will be given three (3) days to object to those calculations.  If an objection is filed, a hearing will be scheduled by the Court.  If no objection is filed, the Court will enter an order consistent with this decision.


<u>/s/Christine M. Gravelle</u>
Dated: June 3, 2024                                          United States Bankruptcy Judge